Frank Liu
frank.liu.96@gmail.com
304 S. Jones BLVD #3416
Las Vegas, NV 89107
(818)835-0498
Plaintiff in Pro Per

FILED

SEP 20 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

C21-07313

JSW

| | |
|---|---|
| Frank Liu,<br>304 S. Jones Blvd. #3416 Las Vegas, NV 89107<br>　　　　　Plaintiff, | ) <br> ) <br> ) <br> ) | Case No: _____ |
| vs. | ) <br> ) | **COMPLAINT** |
| TNC US Holdings (The Nielsen Company US LLC)<br>85 Broad St. New York, NY 10004<br>　　　　　Defendant. | ) <br> ) <br> ) <br> ) <br> ) | **DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

This is a lawsuit filed Pro. Se by Frank Liu to correct the unlawful employment practice of racism, discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This action seeks to provide appropriate relief to Frank Liu, who was adversely affected by such practice. Plaintiff, Frank Liu contends Defendant Nielsen Company US LLC (TNC Holdings) has discriminated against Frank Liu by suspending and terminating his employment because he exercised her rights under Title VII informing The Nielsen Company (TNC Holdings) he was thinking about filing a case with the EEOC back in March to April of 2019 and had complaints about racism to report.  He made it clear to Tracy Staines (Vice President

Human Resources at Nielsen) that he was going to file with the EEOC for racism, discrimination and retaliation before Nielsen abruptly terminated him.

## JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 703(a), 704(a), 706(f)(1), 706(f)(3), of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e-5(f)(1), 2000e-5(f)(3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court system.  TNC Holdings (The Nielsen Company) has offices throughout California.

3. Frank Liu has been sent a number of times to work in California to assist local markets including San Francisco, Los Angeles and San Diego for several months combined during his employment at Nielsen.

4. A significant portion of Nielsen's business stems from California TV stations and advertisers.

5. Some of Nielsen's San Francisco Bay Area offices include:

    A) Nielsen - 1919 Battery St. San Francisco, CA 94111

    B) Nielsen Sports – 20 N San Mateo Dr. San Mateo, CA 94401

    C) Gracenote (A Nielsen Company) – 2000 Powell St. Suite 1500 Emeryville, CA 94608

6. Nielsen recruits and maintains thousands of homes across California.  Frank Liu was sent to recruit some of the homes.

7. Frank Liu does not have a home of his own in any state.  Currently he is staying in Oakland, CA, so is suing in the Northern District of California due to proximity.  The

address used for the purposes of this lawsuit in Las Vegas is his mailing address.  It is not possible to live at the Las Vegas mailing address.

8. Frank Liu is a United States citizen but has been abroad for over 2 years.  He recently returned to the USA in order to beat the statue of limitations for the 90 day right to sue letter issued by the EEOC.  He has been abroad for over 2 years 3 months and had great anxiety returning to the USA due to the racism and retaliation experienced at Nielsen.

9. Since Frank Liu is currently staying in Oakland, California, and has had no job for over 1 year and does not seem to have been eligible for unemployment benefits as he has been abroad for an extended period of time before returning to the USA.  It would be a financial hardship to force Frank Liu to travel to another state to file his federal lawsuit.

## PARTIES

10. Plaintiff Frank Liu is a Chinese American who was born in California and worked for The Nielsen Company US LLC (TNC Holdings).  He was hired in January 2016 in Las Vegas, NV.  He was a top membership representative, and was recruited to transfer to Seattle, WA market during the expansion program late 2016 and was offered a raise.  In 2017, he was recruited to join the SWAT team (elite traveling team) that was assigned different markets by the manager.  He was sent to work in the various markets and no longer had a home in any state.  He was sent to work in California multiple times.

11. As a SWAT membership representative Frank Liu had little control over where his manager would send him.  He was also sent to work in the Greater New York City market.  Before his termination, he has worked for Nielsen for over 3 years and received multiple accolades from managers for performance.

12. At all relevant times, Defendant has continuously been and is now doing business in the State of California and has continuously had at least fifteen (15) employees.

13. TNC Holdings (The Nielsen Company has multiple offices and hundreds of employees throughout California. Their San Francisco Local People Meter market is one of the largest markets they have in terms of home count.

14. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e-(b), (g) and (h).

## GENERAL ALLEGATIONS

15. Frank was the top performer on the SWAT team hired by Luke Berglin in 2017. Luke Berglin transferred jobs to a different position. A new manager named Tanner Tate was brought to manage the SWAT team in late 2018. Frank Liu received raises throughout his career at Nielsen. He was a top performer when he was sent to San Diego. He earned bonuses every month.

16. Throughout Frank Liu's employment at Nielsen, managers would re-assign Asian homes from other membership representatives to Frank Liu even though some of the homes spoke little to no English. Besides getting Mandarin speaking homes, Frank would also be assigned Korean and Vietnamese speaking homes. Frank Liu only speaks English and Chinese. Frank Liu disagreed with being assigned and targeted with Asian homes because Nielsen had a policy that hurts membership reps if they couldn't sign up homes that was deemed a first contact (Initial Basic Rate system). For example, if a non-Asian employee went to the door and found out the home spoke Korean, and the home was given to Frank Liu to try to sign up, Frank Liu could not speak Korean, and would try to recruit the home in English because management assigned the home specifically for Frank Liu to recruit. If Frank Liu was unable to sign up the home, he

would be hit with the refusal for his attempt while the previous membership representative assigned the home would not be hit if the previous membership representative did not try to recruit the home, and only discovered they were Asian and did not speak English in order to inform management who in return would reassign the home to an Asian membership representative for recruitment. This practice was done when Frank Liu was sent to work in California and be targeted with Asian homes. It also happened to him in other markets including Las Vegas and New York.

17. Management has also specifically targeted Frank Liu by assigning him Asian homes by looking at census data to identify work that are in Asian neighborhoods based on census data. Other demographics are also segregated through recruitment. Another example of this racial policy is in Las Vegas, John Payton (Las Vegas Market Manager) told Frank Liu if a basic (first home selected for the sample) is Hispanic and even if the household spoke English, if any member of the household had even a slight English accent, to contact the manager, and have the home passed to a Spanish speaking membership representative. Frank Liu was good at signing up Hispanic homes that spoke English, and did not like that John Payton was telling him to give up signs which would affect his bonus. Although Frank Liu complained about these policies, nothing was done.

18. On February 20, 2019, Frank Liu was picked on and harassed by new SWAT market manager, Tanner Tate during a conference call where Tanner Tate humiliated Frank Liu by telling him to stop talking even though it was Frank Liu's turn to talk about tips on how to gain access to secured buildings for recruitment. Tanner Tate told Frank Liu that he can not talk for the rest of the call which humiliated Frank Liu in front of the other teammates. Tanner Tate asked Frank Liu to stay on after the conference call ended, and Frank Liu expressed to Tanner Tate that it was rude what happened. Tanner Tate was dismissive and aggressive in the call. Tanner Tate needed to go onto another conference call and asked if Frank Liu wanted to continue the conversation later, but

Frank Liu declined as he didn't see it as productive to do so.  Tanner Tate disconnected the call as he needed to jump on another conference call.

19. Later that day, Tanner Tate, called Frank against Frank Liu's wishes not to continue the conversation about the conference call earlier that day and wanted to continue talking about it.  Frank Liu informed Tanner Tate that he felt humiliated and it was rude how he was treated. In response, Tanner Tate told Frank Liu "Don't be a chink."  Frank Liu told Tanner Tate what he said was racist.  Tanner Tate dismissed Frank Liu's objection to being called a chink threatening Frank Liu if he went to HR, they would not believe him.

20. Since February 20, 2019, Frank Liu had anxiety over what happened, and would no longer voluntary speak on conference calls.  Instead, he would type responses in the Google Hangouts chatbox.  Only if asked a direct question by Tanner Tate requiring a verbal response, would he speak on conference calls.

21. On March 4, 2019 a teammate made comments in group text that was offensive and racist directed against Chinese people.  Frank Liu stated it was racist, but Tanner Tate didn't think it was racist and defended the inappropriate comments.

22. Tanner Tate calling Frank Liu a chink on February 20 and Tanner Tate brushing off racist comments in group chat against Chinese people on March 4 affected Frank Liu.  He contacted Nancy Philips (Chief Human Resources Officer) sometime in March in hopes of reporting these incidents to her.  Nancy Philips declined to speak to Frank Liu.  Instead it was directed to a lower HR officer, Sandee Crossley which Frank Liu spoke to, but Sandee Crossley was dismissive and did not respect Frank Liu's request for anonymity as she put a HR conference call invite in Frank Liu's google calendar which would be easily seen by Tanner Tate.  Frank Liu was fearful of retaliation and wanted to speak to Nancy Philips directly, but Nancy Philips was not open to speaking to Frank Liu.

23. Frank Liu sprained his ankle on March 14, 2019 while recruiting homes.  He emailed pictures of his sprained ankle to Tanner Tate on March 18, 2019.  Tanner Tate was OK with Frank Liu continuing to work and recruit homes.

24. Frank Liu emailed Nancy Philips on March 20, 2019 that he was going to file a report with the EEOC in regards to harassment, discrimination and retaliation (see Exhibit A).  Nancy Philips still refused to speak to Frank Liu.  She handed it off to her second in command Shannon Buggy (Senior Vice President Global Human Resources).

25. Frank Liu requested to get an X-Ray for his ankle as he wanted to see if anything was broken. During this time Frank Liu continued to work full-time.

26. On April 1, 2020, (less than 2 weeks after emailing Nancy Philips about wanting to file with the EEOC), Tanner Tate and Tania Rosello (Worker's Compensation Ambassador at Nielsen) told Frank Liu not to work anymore and to go see a doctor about his ankle.  Frank Liu went to a doctor, and X-Rays confirmed nothing was broken. Frank Liu was relieved and wanted to return to work that same day.  Tanner Tate refused to allow Frank Liu to go back to work even though he was OK with Frank Liu working from March 14 to April 1 despite having sprained his ankle.  Tania Rosello informed Frank Liu that he needed a return to work letter.  The hospital Frank Liu went to does not provide return to work letters, but did provide Frank Liu with an ankle brace, and referred Frank Liu to see a podiatrist.

27. Frank Liu was prohibited from speaking to Shannon Buggy about his complaints about racism, discrimination and retaliation because he was directed not to work and speaking to HR would be considered paid work.  Frank Liu emailed Shannon Buggy on April 2, 2019 about this, and she stated they can "connect" after Frank Liu was cleared to go back to work (See Exhibit B).

28. On April 4 2019, Frank Liu went to Ridge Foot and Ankle Associates and saw Dr. Patel.  He received a return to work letter.  The doctor stated Frank Liu can return to work while wearing an ankle brace and if possible, less walking.

29. On April 4, 2019, in the parking lot, Frank Liu called and spoke to Tania Rosello who agreed that the doctor's letter was fine and this doctor said Frank Liu could go back to work and that he should work out the "if possible" part with Tanner Tate. This is a direct quote of the conversation:

Frank: "So what is this? If possible accommodate areas with less-"

Tania: "You and Tanner will discuss that piece. And that's what I'm going to put in the email cause you and he know better than me. You know the area that you work. And if you all can work it out, that's perfectly fine because the doctor is- this doctor is saying that you can wear your brace and you can work. So that is fine with me."

30. Despite what Tania Rosello stated on April 4, 2019, Frank Liu was prohibited from going back to work the next day. Tania Rosello wanted Frank Liu to find out how many hours he could walk a day. Frank Liu was unable to find out that information from Ridge Foot and Ankle Associates (Dr. Patel's office) as they refused to respond to his calls or emails regarding Nielsen's question of how many hours Frank Liu can walk a day.

31. On April 8, 2019 Maria Flores (Sedgwick Claims Services) emailed Tania Rosello (Nielsen Workers Compensation) that the number of hours Dr. Patel would limit Frank Liu walking per day was 4 hours. Driving would not be affected so Frank Liu can drive as much as he needs for work. Despite Tania Rosello finding out that the number of hours for walking was set at 4 hours a day by Dr. Patel, Tania Rosello kept on asking Frank Liu to find out how many hours Dr. Patel would allow him to walk per day. He was never able to get an answer from Dr. Patel's office. The reason why we know that on April 8, 2019 Maria Flores and Tania Rosello found out it was 4 hours of walking per day is because Frank Liu requested Sedgwick Claims Services to release notes for the case as allowed by law and this request was a long time after Frank Liu was already

terminated from Nielsen. This is clear that Nielsen was gaslighting Frank Liu and deceiving Frank Liu to keep Frank Liu from going back to work.

32. Because Nielsen would not allow Frank Liu to go back to work despite Dr. Patel's letter, and Frank Liu was unable to get a reply from Dr. Patel's office about how many hours he was allowed to walk a day, Frank Liu requested to be able to see a different doctor. Tania Rosello told Frank Liu he needed to find a doctor that took Nevada's workers compensation fee schedule. Frank Liu never consented to have the work injury filed in Nevada as he no longer lives in Nevada and the work injury happened in Newark, NJ. The New York market includes parts of New Jersey and New York so Frank Liu was recruiting homes in both New York and New Jersey. Frank Liu was staying at a hotel in New York City around this time.

33. Frank Liu contacted a doctor's office, but after giving them the worker's compensation information, discovered his claim was denied because the doctor's office tried to contact Sedgwick for authorization to treat Frank Liu.

34. Frank Liu contacted Maria Flores (Sedgwick) and was told his claim was being denied because under Nevada law, there needs to be an obstacle that led to Frank Liu's injury. Frank Liu asked if stairs are considered obstacles, and was told they are. Maria Flores said Frank Liu never told her about stairs which was untrue as Frank Liu did tell Maria Flores about stairs. There is documentation of stairs being mentioned, and Sedgwick had wrongfully denied Frank Liu's case.

35. Frank Liu was unable to see a doctor when the case was denied because he did not have personal health insurance and work injuries need to be through workers compensation and not personal health insurance.

36. On April 18, 2019 Gordon sent Frank Liu a letter stating if Frank Liu could not get a doctor's note for return to work by April 22, then he would be placed on unpaid personal leave until he could get a doctor's note to clear him to go back to work (see Exhibit C). Nielsen did not accept Dr. Patel's return to work letter because they had

problems with "if possible, accommodate areas with less walking." Frank Liu did not think the "if possible" was mandatory as it stated "if possible." Frank Liu wanted to go back to work but Nielsen did not allow him to.

37. Frank Liu spoke to Tracy Staines about not being able to go back to work, and in the call Frank Liu mentioned again that there was racism, discrimination and retaliation going on and had things to report. Frank Liu also told Tracy Staines he was told not to clock work done like calling management back. Tracy Staines was dismissive when Frank told her that as she stated she was there to help Frank Liu get back to work and that matter was a separate thing and would be handled separately.

38. Frank Liu was able to successfully contest his workers compensation claim being filed in the wrong state because he showed Nielsen that the Nevada C4 was signed under duress as next to his signature, it even said "under duress" as Frank Liu had never agreed to have his claim filed in Nevada. Sedgwick agreed to transfer the claim to New Jersey and the claim would be open and not in denied status.

39. On April 19, 2019, Frank Liu was contacted by Sedgwick New Jersey and told he could go to Concentra Urgent Care for a doctor's appointment on Saturday April 20, 2019. He was informed that they would have his case information already. Frank Liu called the clinic on Saturday April 20, 2019, but was told that Sedgwick failed to send them the worker's compensation case information so was unable to go to the clinic, and Sedgwick was closed over the weekend (Saturday 20th and Sunday 21st) so the clinic would not be able to get Frank Liu's claim information to see Frank Liu.

40. On Saturday April 20, 2019 Frank Liu was frustrated about how dismissive Tracy Staines was and how he was unable to communicate with top HR about his complaints about racism, discrimination and retaliation, so Frank Liu sent an email titled "Formal Complaint Against Tanner Tate" and specifically mentioned there was racism, discrimination, retaliation and harassment in that email (see Exhibit D). Frank Liu sent the email to Shannon Buggy (Senior Vice President Global HR), Nancy Philips (Chief

Human Resources Officer) and David Kenny (CEO of Nielsen). In the email, Frank Liu also stated, he was thinking about going to the EEOC unless HR acts to correct the situation.

41. On April 23, Frank Liu went to Concentra Urgent Care and received a full return to work letter. He called Tracy Staines (Vice President Nielsen Human Resources) and informed her he received a full return to work letter, and after asking permission to text her the letter, Frank Liu texted Tracy Staines the full return to work letter at 2:58 PM EST (see Exhibit E).

42. Although the "Formal Complaint Against Tanner Tate" email sent on April 20, 2019, Frank Liu also asked the recipients to confirm receipt of email, neither Shannon Buggy, Nancy Philips or David Kenny had confirmed receipt of the email complaint. Because of that, Frank Liu texted Tracy Staines asking her if she could confirm receipt of that email as she was working with Shannon Buggy.

43. At 4:59 PM EST, Tracy Staines asked Frank Liu if they can have a call at 5:30 PM EST that day. Frank agreed. Although Frank Liu received the full return to work letter, he still needed Nielsen to review the note and give him permission.

44. At or around 5:30 PM EST, Frank Liu had a conference call with Shannon Buggy and Tracy Staines. Shannon Buggy informed Frank Liu he was terminated from his job because they lost faith in Frank Liu's ability to do his work. Frank Liu had the 5th most signs in the entire nation in 2018 for membership representatives at Nielsen so what they said didn't make too much sense. Frank Liu's ability to do his job was never an issue. Frank Liu suspected Nielsen might retaliate against him for wanting to go to the EEOC about racism, discrimination and retaliation so had secretly recorded the conversation as in New York and New Jersey, it is a one party consent state. Frank Liu was correct. Nielsen was retaliating by terminating his employment about 2.5 hours after texting the full return to work letter to Tracy Staines.

45. In Nielsen's EEOC response filing, Nielsen claims that over "approximately six week period of time" Frank Liu "refused to return to a medical provider to get updated documentation" in order to return to work (see Exhibit F). This is untrue, as April 1, 2019 was when Frank Liu was told not to work anymore, and was terminated on April 23, so this was not 6 weeks. Frank Liu also went to 3 doctors, and had to fight to have his workers compensation claim denial overturned/transferred. Frank Liu was fired about 2.5 hours after he texted Tracy Staines a full return to work letter from Concentra Urgent Care. In Nielsen's supporting documentation sent to the EEOC, Nielsen only attaches two doctor's notes (emergency room and Ridge Foot and Ankle Associates (Dr. Patel's office). They purposely omitted the full return to work letter from Concentra Urgent Care.

46. Because Frank Liu wanted to complain and informed Nielsen he was going to the EEOC, Nielsen HR and Tanner Tate prevented Frank Liu from working, and refused to accommodate 4 hours of walking a day restriction. Because Frank Liu typically works 7 days a week to hit 40 or more hours a week, in all actuality Nielsen did not need to accommodate Frank Liu at all. It is typical to drive 10-20 hours a week due to traffic especially while recruiting in both New York and New Jersey, and if Frank Liu goes door to door for 4 hours a week for 7 days that is 28 hours. Plus 10-20 hours of driving work, and weekly conference calls and admin time, Frank Liu could have easily hit at least 40 hours a week if he knew the doctor was specifically restricting him to walking 4 hours a day. Nielsen refused to let Frank Liu know that he was restricted to 4 hours of walking a day by Dr. Patel, even though Tania Rosello knew that since April 8, 2019 as internal email between Sedgwick and Tania Rosello at Nielsen prove this. The internal email between Maria Flores (Sedgwick) and Tania Rosello (Nielsen) was not known to Frank Liu until after he was already terminated as he requested to get those notes from Sedgwick much later.

47. Nielsen has accommodated people in the past due to medical issues. After Frank Liu was terminated, he discovered Lauren Heard a membership representative was allowed to work part time due to stress. Lauren Heard was classmate in the same training class for new hires as Frank Liu in 2016.

48. Frank Liu wanted to go back to work. He was prevented from going to work by HR and management. Initially he was allowed to work after his work injury, but after he wanted to complain about racism, discrimination and retaliation and made it clear to Nielsen human resources that he was thinking about going to the EEOC, Nielsen prohibited Frank Liu from working. Nielsen would not accept the documentation from the hospital in New Jersey, or the letter from Dr. Patel's office that allowed Frank Liu to go back to work with an Ankle brace. Even though Tania Rosello knew Frank Liu was limited by Dr. Patel to 4 hours of walking a day, she still asked Frank Liu to find out how many hours he was allowed to walk which he received no answer. Against Frank Liu's wishes Nielsen filed the workers compensation case in Nevada even though the work injury happened in New Jersey and Frank Liu had not lived in Nevada since late 2016. Sedgwick/Nielsen wrongfully denied Frank Liu's workers compensation case, in order to keep Frank Liu from working. When Frank Liu finally got a full return to work letter with no restrictions from a third doctor's visit at Concentra Urgent Care, about 2 and a half hours after texting the letter to Tracy Staines (Vice President Human Resources), Frank Liu went on a conference call with Shannon Buggy (Senior VP HR) and Tracy Staines (VP HR), and on the call, Shannon Buggy terminated Frank Liu.

49. On the termination call on April 23 that took place at 5:30 PM EST, Frank Liu asked if they got his "Formal Complaint Against Tanner Tate" email. Shannon Buggy finally acknowledged receiving it and stated they will look into it. "Will" is future tense. Neither Shannon Buggy nor Tracy Staines appeared to care about his email stating there was racism, discrimination and retaliation. Shannon Buggy's behavior is contradictory to her email on April 2, 2019 stating she can connect with Frank Liu about his

Complaint

complaints after he was allowed to return to work. This means Nielsen decided to fire Frank Liu and didn't want to hear his complaints after all.

50. Shannon Buggy offered Frank Liu 6 weeks severance pay to sign a general release waiver so he couldn't sue Nielsen. Frank Liu refused.

51. During the termination call, Frank Liu inquired about the letter sent by Chris Gordon stating after April 22, 2019, if Frank Liu could not provide a full return to work letter, he would be placed on personal leave and could have a rental car for 30 days, and if he could still have the rental car. Shannon Buggy stated that was not the case anymore as now he was terminated and before he was just going to be placed on personal leave. It appears they decided to terminate Frank Liu after the letter was sent on April 18, 2019. The major thing that happened between April 18, 2019 and April 23, 2019 was Frank Liu sending a formal complaint against Tanner Tate email on April 20, 2019 informing Shannon Buggy, Nancy Philips and CEO David Kenny that Frank Liu was considering filing with the EEOC due to discrimination, retaliation and racism at Nielsen. All the facts add up, and Nielsen without a doubt retaliated against Frank Liu for wanting to file with EEOC.

52. Nielsen's false reasons for terminating Frank Liu from their EEOC statement response was pretext to terminate Frank Liu who had complaints of racism, discrimination and retaliation and informed Nielsen he was considering going to the EEOC.

53. Even though Frank Liu was injured on the job and Nielsen prohibited Frank Liu from working, Shannon Buggy said they were going to use up Frank Liu's personal days, sick days and holidays to cover the days he was out of work.

54. The person who Nancy Philips ended up assigning to hear Frank Liu's complaints was Shannon Buggy. Shannon Buggy was the same person who terminated Frank Liu. Typically senior vice presidents of HR don't fire membership reps as membership reps are low on the corporate ladder. Nielsen used Frank Liu's sprained

ankle against him and refused to accommodate anything to keep him from working after he mentioned he wanted to go to the EEOC for complaints. Nielsen lied to the EEOC in their response statement and omitted the fact he had a full return letter hours before he was terminated. Nielsen only showed the first two doctor's notes, but choose to omit the 3rd one from the record. In Frank Liu's employment records, which he requested from Nielsen after he was terminated, it appears Nielsen also fabricated a 2019 annual review as no 2019 annual review exists because a 2019 annual review would have taken place in 2020.

55. Tanner Tate also has a history of racist social media posts. Nielsen is fully aware of Tanner Tate calling Frank Liu a chink yet won't fire Tanner Tate. Nielsen is also fully aware of Tanner Tate's racist social media posts, yet won't fire Tanner Tate. See Exhibit I for some of Tanner Tate's racist social media posts.

## Additional Discrimination Policies of the TNC Holdings/Nielsen Company

56. Frank Liu along with all membership representatives were directed to discriminate against households based on race. Nielsen has a system called TAR which each week would change and they would be criteria to sign up alternate homes. Some weeks, the TAR would state NON-BLACK or NON-ASIAN or NON-HISPANIC meaning sign up any home that is not Black, or not Asian, or not Hispanic that matches the basic (first home's) type of TV reception. When Frank Liu was sent to work in the San Francisco market, he has seen NON-ASIAN show up on TAR several times.

57. Besides preventing certain races from signing up some weeks, Nielsen also makes membership representatives like Frank Liu offer compensation to homes based on their race. For Local People Meter Markets (LPM) such as San Francisco, Los Angeles, Seattle, New York, Atlanta, DC, etc. Nielsen has different gift charts payouts for different races (See exhibits G and H). Some races are paid higher than others on the gift charts. The lowest paid home over 2 years are Hispanic homes that speak only

English or mostly English at home on the 2 year gift chart. Black/African American homes are paid less than Asian homes. There is also a race/age calculator app that Nielsen gives out to membership representatives to ensure they offer the right gift chart to the household. Membership representatives can also offer extra gift cards to households to sign up based on their race or age.

58. Although Nielsen might argue that some races are underrepresented and need extra compensation to sign up, the compensation gift charts for LPM markets is determined by race/age and is the same across the nation and not by how underrepresented a given race/age is in the specific market, and it does not matter what the existing sample consists of. For example, if Black/African Americans are underrepresented in Nielsen's San Francisco market sample, and Asians homes are over represented, Black/African Americans will still be offered hundreds of dollars less than Asian homes. While Frank Liu has signed up a lot of homes across the United States in various markets, this policy has always troubled Frank Liu.

## Wage Complaints

59. Nielsen managers have violated their own company policies by telling employees not to sign up streaming-only homes. Upper management has also pushed against streaming only homes in the sample. By doing so and directing membership representatives to skip over eligible streaming only homes, it decreases membership representatives monthly bonuses as they bonus off of the number of homes they sign up. Frank Liu was discouraged by management from signing up streaming only homes that qualified in several markets including in California. Discriminatory practices against homes that stream who are otherwise eligible according to Nielsen's own policies lowers Frank Liu's monthly bonuses. For other representatives who might not sign up as many homes, they endanger these other membership representatives to being put on performance improvement plans for not meeting their monthly target of homes signed.

Another example is Kevin Kelleher (Seattle Sales Manager) told Frank Liu and several other membership representatives not to sign up streaming only homes. Instead of terminating or demoting him, Kevin Kelleher is now the National Training Manager at Nielsen.

60. Nielsen management have told Frank Liu to not clock work done. One manager told Frank Liu specifically to roll back his timecard. Tanner Tate told Frank Liu not to clock a work related call. Frank Liu did report it to human resources.

61. Nielsen's Mobile Time Trak (MTT) system often has syncing issues and time clocked would not sync up or somehow end up with a 0 minute total time for activities. Nielsen needs to reimburse employees who have been underpaid due to their own system errors.

### FIRST CLAIM FOR RELIEF (Retaliation and Wrongful Termination)

62. Up to Frank Liu's termination on April 23, 2019, Defendant has engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by suspending and terminating the employment of Frank Liu because he opposed discriminatory practices and communicated to defendant he was considering filing with EEOC.

63. The defendant refused to allow Frank Liu to go back to work or provide a reasonable accommodation to a temporary disability because Frank Liu informed Nielsen he wanted to file a complaint of racism, discrimination and retaliation with the EEOC.

64. The effect of the events described above has been to deprive Frank Liu of equal employment opportunities in retaliation for exercising his federally protected rights.

65. The unlawful employment practices described above were intentional and with malice from Shannon Buggy (Senior Vice President Human Resources) and Tracy Staines (Vice President Human Resources).

66. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Frank Liu.

### Additional Claim for Relief

67. Managers have specifically targeted Frank Liu with Asian homes while recruiting. Even though Frank Liu does not speak Korean or Vietnamese, he would get assigned homes that spoke only or mainly Vietnamese and Korean. These acts in combination with Nielsen's "Initial Basic Rate" policy penalizes Asian membership representatives including Frank Liu from not being able to sign up homes they can not adequately communicate with.

68. Tanner Tate telling Frank Liu "Don't be a chink" is a violation of Nielsen's own code of conduct yet Nielsen continues to employ Tanner Tate.

69. Managers including Tanner Tate have told Frank Liu to not clock all of Frank Liu's work time in violation of labor laws. In addition, Nielsen's own Mobile Time Trak (MTT) system often has sync issues and contribute to not paying Nielsen membership representatives the entire time they worked.

### Additional Details:

70. The events of Nielsen and the racism led Frank Liu to move away from the USA in June of 2019. Frank Liu (Chinese American) ended up living in China (a country he never visited before his termination at Nielsen), and ended up becoming a high school English teacher. In 2020, he was impacted by Covid-19 and China banned foreigners from re-entering China while Frank Liu was visiting Indonesia during Spring

Holiday.  Frank Liu could not renew his contract teaching in China as he was prohibited from entering China due to Covid-19 restrictions by the Chinese government.

71. Although Frank Liu now had no job, he did not want to return back to the USA due to what happened at Nielsen and felt anxiety even thinking about coming back to the USA.  Because he was abroad, and the last job Frank Liu had was in China, Frank Liu never received any unemployment benefits while most other US citizens were receiving COVID 19 unemployment relief and extra unemployment compensation.

72. It wasn't until September 4th, 2021 that Frank Liu finally returned back to the USA because his 90 days right to sue letter expires by end of day September 22, 2021. He was forced to come back to the USA and had been reluctant to return due to the racism, discrimination and retaliation at Nielsen which has psychologically affected him.

## PRAYER FOR RELIEF

Wherefore, the plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which retaliates against employees who complain about discrimination;

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who exercise their federally protected rights to complain about discrimination and which eradicate the effects of its past unlawful employment practices;

C. Order Defendant to make whole Frank Liu by providing appropriate back pay with prejudgment interest, and other affirmative and equitable relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, rightful-place reinstatement or front pay;

D. Order Defendant to make whole Frank Liu by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and medical expenses;

E. Order Defendant to make whole Frank Liu by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation;

F. Order Defendant to pay Frank Liu punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

G. Order Defendant to provide training to its officers, managers and employees regarding discriminatory harassment and retaliation in the workplace;

H. Grant such further relief as the Court deems necessary and proper in the public interest; and

I. Award the plaintiff the costs in this action.

J. Nielsen to no longer discriminate against Asian membership representatives by targeting or re-assigning them homes solely based on race. Matching the same language class might be OK, but for example targeting a Mandarin speaking representative with Korean, Vietnamese or Japanese only speaking homes should be prohibited as a Mandarin and English only speaker can not speak Korean, Vietnamese or Japanese.

K. Nielsen to redo their compensation gift charts and offer all homes no matter race and/or age the same compensation. Nielsen should stop forcing Membership Representatives to pay homes based on race and/or age. If a specific race or ethnicity is over-represented in the sample, they may still get higher compensation than under-represented race or ethnicity households so their system is discriminatory solely based on race and/or age.

L. Nielsen should stop having TAR demographics that state "NON-ASIAN", "NON-BLACK" OR "NON-HISPANIC". Forcing membership representatives to

discriminate and pass over homes that are of a specific race or ethnicity is discriminatory.

M. Nielsen to abide by their social media policy in all cases and terminate or reprimand all employees that are outed for racism online. Picking and choosing who they decide to fire for racism can lead to favoritism and managers protecting their close/favorite managers/employees from termination for breaking rules.

N. Nielsen to terminate managers who tell employees to not sign up streaming only homes (BBO) in violation of their own policy.

O. Pay Frank Liu for time worked when Tanner Tate told Frank Liu not to clock his time. Nielsen has a history of management telling employees not to clock work done or under clock work done. New policies need to be implemented to address this

P. Pay Frank Liu and other employees who have been paid less than they should due to Mobile Time Trak (MTT) syncing issues that report 0 minute work activities in error. Update or create a new MTT system that is much more reliable so employees are paid the time they actually worked.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its Complaint.

Dated: September 20, 2021

Respectfully submitted,

Frank Liu
Plaintiff in Pro Per

## Supporting Document Exhibits

### Exhibit A

On March 20, 2019, Frank Liu sent an email to Nancy Philips (Chief Human Resources Officer) mentioning harassment, discrimination and retaliation.

> Date: Wed, Mar 20, 2019 at 11:39 PM
> Subject: Re: voicemail and concerns at work
> To: Nancy Phillips <nancy.phillips@nielsen.com>
>
>
> Hi Nancy,
>
> To clairify, it will be filed regarding harassment, discrimination and retiallation basis, and not just the WC issue.
>
> Thank you.

### Exhibit B

Frank Liu sent an email on April 2, 2019 informing Shannon Buggy that Tanner Tate told Frank Liu that he was not allowed to work so was unable to speak to Shannon Buggy about his complaints as that would be considered work.  Shannon Buggy asked Frank Liu to let her know when he returns to work so they can connect.

> On Tue, Apr 2, 2019 at 8:41 PM Shannon Buggy <shannon.buggy@nielsen.com> wrote:
> Thanks for reaching out Frank. I will not forward your email to anyone. Let me know when you return and we can connect.
>
> Take care and hope to speak soon.
>
> 🔲
>
> On Tue, Apr 2, 2019 at 2:20 PM Frank Liu <frank.liu@nielsen.com> wrote:
> Hi Shannon,
>
> I am not allowed to go back to work right now as per Tanner, and can not speak to you as that would be considered returning to work.  I was told not to do expense reports or submit my time card until after being cleared to work.  Please do not follow up with Tanner, or Tania.  I specifically asked something I sent Tania to be confidential, and she in return shared it with Tanner.  Please again do not follow up with anyone until I can return to work and brief you on what I have if I decide to then, as it appears Nielson will share anything with Tanner

### Exhibit C

Excerpt from Chris Gordon (HRBP) letter sent to Frank Liu on April 18, 2019 in which he detailed the workers compensation case was denied and if Frank Liu could not get his case overturned or get a work release, he would be placed on personal leave on April 23, 2019.

> Your workplace injury has been denied by Sedgwick effective April 16, 2019. Unless your
> Worker's Compensation claim is appealed and overturned by Sedgwick and/or Nielsen receives
> a work release by end of day April 22, 2019,  we will move you to a Personal Leave of Absence
> effective April 23, 2019.

Furthermore, the letter stipulated that once put on personal leave, if Frank Liu gets a
work release letter, he would be able to return to work as seen below:

> Nielsen will allow you to expense a one-way flight to your home address in Nevada for you
> to rest and recover. A return flight to your assigned SWAT Market will be covered, upon your
> release to return to work with a medical provider's authorization.

Chris Gordon further stated that Frank Liu can have a rental car for 30 days while on
personal leave.

> When out on Personal Leave, Nielsen does not cover your hotel expenses expenses. Nielsen
> will not approve hotel expenses beyond April 22, 2019. It is therefore your obligation to cease
> all hotel charges by April 22, 2019. Under our Personal Use Benefit policy for company provided
> vehicles you are able to retain the rental vehicle, at the company's expense, for up to 30 days of
> leave. This means, if you need a vehicle you will be allowed to expense a reasonable rental until
> May 22, 2019.

The letter Chris Gordon sent on April 18, 2019 can be interpreted as Frank Liu being in
good standing with Nielsen on April 18, 2019 because if he went on personal leave, he
would have rental car benefits for 30 days, and if he gets work release letter, he can
come back to work.

**Exhibit D**

Excerpt from "Formal Complaint Against Tanner Tate" Email sent April 20, 2019.
Email specifically mentioned racism, discrimination and retaliation.

From  Frank Liu <frank.liu@nielsen.com>
Date: Sat, Apr 20, 2019 at 1:45 PM
Subject: Formal complaint against Tanner Tate
To  Shannon Buggy <shannon.buggy@nielsen.com>, Nancy Philips <nancy.philips@nielsen.com>, David Kenny <david.kenny@nielsen.com>

Hello Shannon,

INCIDENT
I have told you about there has been retaliation, coercion, discrimination and racism at Nielsen.  In this email, I will only give you only one example as I am unsure if Nielsen HR helps cover up wrongdoing, or if they are actually wanting to help correct the situation.  In this email, I will outline just one example of harassment/retaliation from Tanner Tate.  I have numerous others I could share with you, but will not give you the others are am reluctant given how they handled the John Payton coercion issue.

At the end of the email, Frank Liu stated that he was going to go to the EEOC unless HR
acts to correct the situation.

Thank you for reading, and this is 1 example of retaliation/harassment from Tanner Tate.  As discussed, I am going to feed you an example to see how HR handles complaints.  If I feel that it is leading nowhere, I will not share any further examples of retaliation, discrimination, harassment, racism any further with HR.  Basically right now I am thinking to save it for EEOC unless HR acts to correct the situation

**Exhibit E**

April 23, 2019 at 2:58 PM EST, Frank Liu texted Tracy Staines (Vice President Human
Resources) his full return to work letter from Concentra Urgent Care. He then asked
Tracy Staines to confirm receipt of his "Formal Complaint Against Tanner Tate" email.
Instead of confirming, at 4:49 PM, Tracy Staines requested a call with Frank Liu at 5:30
PM. The call at 5:30 PM was with Shannon Buggy and Tracy Staines where Shannon
Buggy terminated Frank Liu. This happened about 2.5 hours after Frank Liu texted
Tracy Staines the full return to work letter from Concentra Urgent Care.



**Exhibit F**

On January 27, 2020 Cathy Beveridge (attorney representing Nielsen) sent the EEOC investigator Nelson Borges a document which outlined Nielsen's defense towards the EEOC complaint. In the document, Nielsen claims they terminated Frank Liu's employment because he failed to provide documentation so he can return to work. You can see an excerpt from the document below:

---

### D. Nielsen Terminated Liu's Employment

Over an approximately six week period of time, Nielsen's Human Resources, Nielsen's worker's compensation coordinator, and Sedgwick (Nielsen's third-party benefits provider) repeatedly asked Liu to provide updated medical documentation, so that he could return to work as he requested to do so. Liu refused to return to a medical provider to get updated documentation. Sedgwick made medical appointments on his behalf and Nielsen provided him with specific directions. Liu was uncooperative. Throughout this time, Liu refused to provide the necessary paperwork for a worker's compensation leave and was fully paid by Nielsen.

During Liu's fully paid medical leave, he continued to perform work-related tasks on his computer. Nielsen personnel directed Liu to stop work and to obtain the needed medical paperwork. In response, Liu was rude, abusive, and raised his voice.

Liu refused to provide updated medical information or documentation to return to work, although he continued to request to do so. Ultimately, Liu was terminated for his repeated refusal to cooperate in a professional manner with routine requests for additional medical information.

Liu was terminated by Nielsen during a call with Tracy Staines and Shannon Buggy on April 23, 2019. He was paid until Friday, April 26, 2019, so that he could return company property and his rental car. Liu's manager, Tanner Tate, did not participate in the decision to terminate Liu.

---

Furthermore, on a separate document, Cathy Beveridge provided "Exhibits" to the EEOC investigator. Exhibit F was for the first visit to the hospital. Exhibit G was the visit to Ridge Foot and Ankle Associates (Dr. Patel's office). It looks like Nielsen/Cathy Beveridge purposely left out Frank Liu's full work release letter from Concentra Urgent Care in their submission to the EEOC.

**Exhibit G**

Nielsen forces all membership representatives to discriminate on households based on race and/or age by offering them different amounts for compensation.

## **LPM** Gift Chart & Discretionary Incentive Chart

| HH Type | Discretionary Incentives | Max Amount | B/A Gift Chart Amount | Gift Chart # |
|---|---|---|---|---|
| Non-Hispanic / Non-Asian / Non-Black | Basic – Household<br>Alt - None | $50 HH<br><br>Alt-$0<br>Tier 3 | Basic $100<br>Alt $50 | GC1_PMb0912.pdf<br><br>GC5_PMa0912.pdf |
| Black and/or <35 | Basic – Per Person<br>Alt – Per Person | $50pp<br>(18+)<br>Tier 2 | Basic $200<br>Alt $150 | GC2_PMb0912.pdf<br><br>GC15_PMa0912.pdf |
| Hispanic, Spanish Dominant<br><br>HH size 2+ and O/R <35<br><br>HH size 2+ and no child | Basic – Per Person<br>Alt – Per Person | $100pp<br>(18+)<br><br>Tier 1 | Basic $400<br><br>Alt $350 | GC4PMb_Monthly0912.pdf<br><br>GC35_PMa_Monthly0912.pdf |
| Hispanic, Spanish Dominant<br>and none of the above | Basic – Per Person<br>Alt – Per Person | $100pp<br>(18+)<br>Tier 1 | Basic $300<br><br>Alt $250 | GC3m_PMb_Monthly0912.pdf<br><br>GC25_PMa_Monthly0912.pdf |
| Hispanic, Non Spanish Dominant | Basic – Per Person<br>Alt – Per Person | $50pp<br>(18+)<br>Tier 2 | Basic $150<br>Alt $100 | GC15_PMb0912.pdf<br><br>GC1_PMa0912.pdf |
| Asian | Basic – Per Person<br>Alt – Per Person | $100pp<br>(18+)<br>Tier 1 | Basic $200<br><br>Alt $150 | GC2_LPMb_Monthly0912.pdf<br><br>GC15_LPMa_Monthly0912.pdf |
| 5+ Household | Basic – Per Person<br>Alt - Person | $50pp<br>(18+)<br>Tier 2 | n/a | n/a |
| Basic (only) Recheck Refuse | Basic - Household | $100 HH | n/a | n/a |

# Exhibit H

Compensation pages for alternates in Nielsen's Local People Meter (LPM) markets. This would include the greater San Francisco Bay Area.

**Exhibit I**

Since Tanner Tate called me a chink, it led me to search is social media to see if he also posted racist things.  Here are some of Tanner Tate's racist tweets.  Nielsen human resources is also aware of these tweets, and continues to employ Tanner Tate.



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

| To: | Frank Liu<br>304 S. Jones Blvd #3416<br>Las Vegas, NV 89107 | From: | Tampa Field Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 511-2019-03064 | Christopher S. Griffin,<br>Investigator | (813) 710-9347 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

| | | |
|---|---|---|
| Enclosures(s) | Evangeline Hawthorne, Director    Digitally signed by Evangeline Hawthorne, Director<br>Date: 2021.06.25 09:56:35 -04'00'<br><br>Evangeline Hawthorne,<br>Director | 6/25/2021<br><br>(Date Issued) |

cc:
Anita Pancholi
Associate General Counsel, Labor and Employment
NIELSEN COMPANY
200 W Jackson Blvd.
Chicago, IL 60606

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued to you* (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not 12/1/10* -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:   **Cathy J. Beveridge**
**Buchanan Ingersoll & Rooney PC**
**401 E. Jackson Street**
**Suite 2400**
**Tampa, FL 33602**

NOTICE OF **RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.